## FAJARDO ET AL. *v.* TIÓ.

### APPEAL from the District Court of Ponce.

No. 554.—Decided February 24, 1911.

TRANSFER OF ACTION—AFFIDAVIT OF MERITS.—An affidavit stating only that the defendant resides outside the district under the jurisdiction of the court in which the action commenced, is not the affidavit of merits mentioned in section 82 of the Code of Civil Procedure.

ID.—An affidavit of merits is that in which the affiant states facts sufficient to enable the court to determine whether or not he has a good ground of defense to the plaintiff's action upon the merits. If this affidavit is not made the transfer of the case must be denied.

ID.—ALLEGATIONS—DEMURRER—JURISDICTION—DEFENDANT'S RESIDENCE.—The question as to the court's lack of jurisdiction by reason of the defendant's place of residence cannot be raised by means of a demurrer, because upon the defendant's appearance to file the same, if the transfer has not been applied for in due form, the party remains under the jurisdiction of the court, pursuant to the provisions of sections 76 and 82 of the Code of Civil Procedure.

EVIDENCE—TESTIMONY OF WITNESSES—HEARSAY TESTIMONY.—Hearsay testimony has probatory force in cases where no exception has been taken to the admission thereof, or has the veracity of the witnesses been questioned, or when such testimony is not essentially incredible or improbable.

ID.—NATURAL CHILD—PROOF OF FILIATION AND ACKNOWLEDGMENT.—Only by weighing the evidence on filiation and acknowledgment, taken in each case, can it be determined whether such evidence is clear and convincing. The isolated nature of a man's public and private acts is not what should necessarily serve as ground to determine whether or not the acknowledgment and filiation have been fully established. Should a witness testify in positive terms that a person acknowledged that he was the father of his child and the court finds in favor of the child, the mere fact that this was the only act of the father is not sufficient for a reversal.

ID.—EVIDENCE VOLUNTARILY SUPPRESSED.—It must be presumed that evidence voluntarily suppressed would have proved adverse had it been given; and if evidence of an inferior character is presented, it must likewise be presumed that had one of superior character been offered it would have proved adverse; wherefore, should a party abstain from testifying about facts wherewith he is acquainted, it is to be presumed that his testimony on such facts would have been adverse to him.

SUPPORT—OBLIGATION TO REIMBURSE.—When the person who, unknown to the one bound to give support, supplies it to the person entitled thereto, is an uncle of the latter, such person has not the character of a *stranger*, for the purposes of section 1795 of the Civil Code, and therefore he cannot demand reimbursement on account of such support.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Messrs. José A. Poventud* and *Domingo Sepúlveda* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of Ponce rendered judgment on February 15, 1910, deciding that Margarita Fajardo, 13 years of age and born at San Germán on May 7, 1896, was the natural acknowledged child of the defendant, Don Juan Angel Tió and Doña María Fajardo, deceased, of Ponce, and also decided that the said Margarita had the right to use the surname of her father and enjoy all the rights of a natural

child, and the defendant was ordered to pay to Juan Fajardo, the complainant, the sum of $600 for the support and care of said minor, and to pay the said complainant the sum of $25 a month for such support from April 1, 1909, the date of the filing of the complaint, and the costs.

Before the defendant answered the complaint he made a motion to transfer the case to the District Court of Mayagüez because he was a resident of San Germán in that district. The District Court of Ponce refused to grant the motion for failure of the defendant to comply with the provisions of section 82 of the Code of Civil Procedure. This section provides:

"If the district in which the action is commenced is not the proper district for the trial thereof, the action may, notwithstanding, be tried therein, unless the defendant, at the time he appears and answers or demurs, files an affidavit of merits, and demands, in writing, that the trial be had in the proper district."

We shall not at this time consider the question of whether the motion should be filed along with the answer or demurrer because the motion itself fails to comply with the law. An affidavit accompanied the motion, but it only set forth the fact that the defendant lived in San Germán. This is not the affidavit of merits to which section 82 refers. The affidavit of merits is one in which the affiant sets forth enough facts to permit the court to see that he has a good defense to the action. (*Buell* v. *Dodge,* 63 Cal., 553; *Nickerson* v. *Cal. Raising Co.,* 61 Cal., 268.) The court was clearly justified in refusing to transfer the cause.

The defendant then demurred on the ground that the court did not have jurisdiction by reason of the residence of the defendant at San Germán. A question of this kind cannot be raised by demurrer because the appearance, without a proper petition for removal, is a submission by virtue of sections 76 and 82 of the Code of Civil Procedure.

The appellant also alleges that the complainant did not present enough proof to entitle the minor to be recognized as a natural child. The complaint set up that Juan Angel Tió and María Fajardo lived in concubinage and that Margarita Fajardo was the fruit of the marriage; that Margarita Fajardo had always enjoyed the status of an acknowledged natural child. There is no proof of either of these allegations.

Moreover, the complaint also sets up that the defendant privately acknowledged Margarita as his natural child and, on occasions, contributed to her support. There is some conflict in the evidence but the preponderance of the same, as to the facts attempted to be proved, is clearly in favor of the complainant.

Appellant, however, bases his argument on the ground that the proof is not sufficient to compel a father to acknowledge a child and that, under the decisions of this court and of the Supreme Court of Spain, the proof must be clear and convincing.

There was proof at the trial tending to show that in 1896, or a short time prior thereto, María Fajardo, the mother of Margarita, was living in San Germán at the house of the defendant's mother; that when María was beginning to be in a family way the defendant caused her to move to a house opposite and, finally, to a so-called "casa blanca" further away; that Margarita was born in 1896; that while Margarita was very young the defendant contributed to her support, sending a stipend (*diario*) to her mother, sometimes through the custody of Bernabé Fajardo, a brother of María, and sometimes through the custody of other persons, and finally, through the child herself; that the defendant continued to visit María after she left his house; that after he ceased to have relations with her she lived with another man and had a number of children by the latter; that about 1907 María and Margarita went to Ponce; that María died in February, 1906; that the complainant then took charge of Margarita and

supported her; that from 1907 on the defendant contributed small sums to the support of Margarita on as many as four occasions, once or twice personally to complainant and once or twice by orders; that the defendant gave small sums of money to Margarita and also gave her his blessing and never repulsed her; that in 1908 the complainant took Margarita to San Germán to deliver her to Tió, and reminded the latter that he had promised to support the child; that Tió then gave Fajardo $15 and Margarita $2, and that defendant asked complainant to keep the child as if it was of his family, and defendant again agreed to take care of the child; that, according to the testimony of Barnabé Fajardo, the father of María Fajardo, he was furiously angry when he learned of her dishonor and that Tió acknowledged himself to be the author of the dishonor, and that he would take care of Margarita and gave her a house and some land; that María, on her death bed, said that Tió was the father of Margarita; that Tió did not want the facts known because he was married, having married in recent years and after the birth of Margarita; that he tried to conceal the fact that he sent money and that he was not to be written to because his wife might find the letters; that María was black and that Tió is white.

There is more similar testimony which, along with the foregoing narration, is mainly given by the two maternal uncles of Margarita and by Margarita herself. A good part of it is vague and much of it is hearsay and opinion. The witnesses were not always made to give the sources of their knowledge when it was evident that they could not have had a personal knowledge of some of the facts. But there was no objection made to any of the evidence and, as there was no attack made on the credibility of the witnesses, we are obliged to consider the testimony as probatory and give it some credence unless it should turn out to be inherently improbable.

The defendant's evidence was principally of persons who testified that the facts could not have occurred as stated, else they would have known about them. The witnesses were

friends and acquaintances of the defendant and also his brother, Salvador Tió; the defendant also attested to the truthfulness of Margarita by making her his own witness, and although she testified to some of the same facts, namely, the giving of money and a conversation about giving her a house, no attempt was made to impugn her testimony. The defendant himself did not testify.

We shall not attempt to define what would constitute clear and convincing testimony, as the facts of each case must speak for themselves. The rule laid down is mainly a rule for the trial court, and the appellate court must be able to say that the court below ought not to have found the proof clear and convincing. The testimony is mainly of the relatives of the girl, but they are usually the persons who are likely to be acquainted with matters relating to a member of their own family, sometimes to the exclusión of other people. We can easily imagine stronger cases. Part of the testimony, especially a part of that of Barnabé Fajardo, seems improbable. On the other hand Margarita's tale is very limited and restrained and bears the ear-marks of truth. There is nothing inherently improbable about it and a similar consideration applies to the testimony of the complainant. It is not necessarily the solitary character of the public and private acts of a man which would determine whether the proof of filiation and acknowledgment is clear and convincing. If a witness testifies in an unmistakable manner that another man acknowledged himself to be the father of a child, and on a trial of the issue the court below found in favor of the child, we could not reverse merely because it was the only act of the father. In the case before us there was evidence of admissions of the defendant and of acts which, if the witnesses are credible, would have no adequate explanation except in the paternity of the defendant and his acknowledgment of the child, and as we have indicated before, the witnesses were not impeached.

There is another aspect. The Law of Evidence, section 102, Laws of 1905, page 88, provides as follows:

"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions and may be controverted by other evidence. The following are of that kind:

"1.  *  *  *

"2.  *  *  *

"3.  *  *  *

"4.  *  *  *

"5. That evidence wilfully suppressed would be adverse if produced.

"6. That higher evidence would be adverse from inferior being produced."

Wigmore, in his work on evidence, points out that these or similar principles apply to the failure of a party to testify when he is best acquainted with the facts. (Wigmore on Evidence, sec. 298.) He also points out that the special circumstances of a case may explain away the failure of a party to take the stand. In this case complainant, Fajardo, testified to a material conversation with the defendant. Bernabé Fajardo told of a conversation between his father and Tió; Margarita told of a number of acts. The explanation of everything lay in the power of the defendant. In his answer under oath he denied the truth of the complaint.

It is suggested by Wigmore that in some of the Southern States a feeling of delicacy about his dishonor may prevent a man from putting himself in a position where his word may be doubted. The latter consideration does not apply here. He had already sworn; he caused his friends and brother to take the stand. The courts lie open to litigants and exist to prevent or remedy wrongs, and as the authorities by Wigmore point out, their main function is the investigation of truth. A defendant may refuse to testify at his own risk. Here the court, along with the other evidence, had a right to draw an adverse inference from the failure of Tió to testify.

Some reliance was placed at the argument on the case of

*Neguruela* v. *Somohano,* judgment of this court of October 1910. In that case the court below had found against the rights of the natural child and there was a conflict in the evidence. Moreover, the father was dead and the alleged child was born after the death, and this court held that there was no satisfactory proof of concubinage. The facts and the condition of the case were very different from the one before us.

There is one error in the record. The complainant was not a stranger to Margarita and was not entitled to be reimbursed for the money expended. Section 1795 of the Revised Civil Code provides as follows:

"When, without knowledge of the person who is bound to give support, a stranger supplies it, the latter shall have the right to demand the same from the former, unless it appears that he gave it out of charity and without the intention of recovering it.

"The funeral expenses, in proportion to the status of the person and to the customs of the locality, must be paid by those who during life would have had the obligation to support him, even though the deceased should have left no property."

An uncle is not a stranger within the meaning of this section.

The judgment must be modified in regard to the money expended and affirmed in other respects.

*Decided accordingly.*

Chief Justice Hernández and Justice del Toro concurred.

Justices MacLeary and Aldrey did not sit at the hearing of this case.